**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LEMONT LOVE, | Civil Action No. 16-2586 (FLW) |
| Plaintiff, | |
| v. | OPINION |
| CITY OF NEW BRUNSWICK, et al., | |
| Defendants. | |

**WOLFSON, UNITED STATES DISRICT JUDGE:**

## I.   INTRODUCTION

This action arises from an incident on April 28, 2009, in which police officers from the

New Brunswick Police Department allegedly assaulted Plaintiff, searched his car and his person,

and arrested him without probable cause.  Plaintiff was subsequently convicted of drug offenses

in connection with his arrest.  Plaintiff, who is African American, alleges that he learned in 2016

that the New Brunswick Police Department engaged in selective enforcement based on race

during the relevant time period and that his arrest and prosecution resulted from racial profiling

and selective enforcement.  In his fifty-four page Complaint, Plaintiff has sued numerous entities

and individuals[1] asserting several theories of liability, and brings claims for relief pursuant to 42

---

[1] Plaintiff has sued the City of New Brunswick, the New Brunswick Police Department, Middlesex County, the Middlesex County Prosecutor's Office, the New Jersey Office of the Attorney General, Middlesex County Superior Court, New Jersey Department of Corrections, Gary Lanigan, Officer Dominick Calogero, Director of the New Brunswick Police Department Anthony Caputo, Middlesex County Prosecutor Andrew Carey, Sergeant Daniel Dominguez, Captain J.T. Miller, Acting Attorney General John Hoffman, Acting Attorney General Robert Lougy, Officer Robert Piper, Officer Daughton, Officer Pappas, Sergeant Richard Rowe, Dispatch Operator John Tkacs, Dispatch Operator Ray Solomon, Assistant Prosecutor Helen Zanetakos, Assistant Prosecutor Christine D'Elia, Assistant Prosecutor Christopher Kuberiet, John Does 1-30, Assistant Prosecutor Glenn Graw, Assistant Prosecutor Marcia Silvia, and Prosecutor Bruce Kaplan.

U.S.C. §§ 1983 and 1985, as well as under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and state law. The Court previously granted Plaintiff's application to proceed *in forma pauperis*. For the reasons explained in this Opinion, the federal claims are dismissed without prejudice pursuant to 28 U.S.C. 1915(e)(2)(B), and the Court declines supplemental jurisdiction over any remaining state law claims at this time.

## II.    <u>FACTUAL BACKGROUND</u>

On April 28, 2009, Plaintiff was sitting in a car on a street in New Brunswick waiting to pick up his friends from a house party. (ECF No. 1, Complaint at 14.) In his rearview mirror, he noticed his friend Lisa walking down the street as a car slowly drove next to her. When the car passed Plaintiff's car, he realized it was a police car. Lisa opened Plaintiff's passenger-side door and told him "Let's go." She went to the driver-side door to help Plaintiff exit the car. Plaintiff and Lisa walked arm-in-arm to the house party. The police then shined a spotlight on the pair, and a voice commanded them: "hey you, stop right there." Defendant Calogero ran up behind Plaintiff and "for no reason grabbed him and slammed him on the trunk of one of the cars that was parked on the street." (*Id.* at 15.) Defendants Pappas, Daughton, and Piper surrounded Plaintiff and Defendant Calogero began searching Plaintiff's pockets. Plaintiff told the officers he had done nothing wrong and would be filing a lawsuit against them for harassing him and exacerbating his preexisting injuries.

An unidentified officer also searched Plaintiff's car without a warrant or consent and discovered a newspaper article that documented a fatal car accident involving Plaintiff. The officer told Defendant Calogero that Plaintiff was really injured, and at that point Calogero arrested Plaintiff "for no reason" and took him to the New Brunswick Police Station.

Plaintiff learned from his lawyer that Plaintiff had been arrested for drug possession. (*Id.* at 16.) Plaintiff denied having drugs; however, Plaintiff's attorney "sold [him] out" and Plaintiff was sentenced to 10 years in prison. The case is currently on appeal.[2]

In 2012, Plaintiff filed an internal affairs complaint against Defendants' Calogero, Pappas, and Daughton. The complaint was handled by Defendant Dominguez, who "rubberstamped" the misconduct of his subordinates. (*Id.*)

In January 2016, Plaintiff was watching the New Jersey News Channel in his cell, and learned that a survey done by the American Civil Liberties Union ("ACLU") had found selective policing in four cities, including New Brunswick, where the April 28, 2009 incident occurred. Plaintiff wrote to the Attorney General requesting "raw data" on this issue, but the Attorney General would not give him any information. On March 6, 2016, the ACLU sent Plaintiff a letter with "all the information he needed." The target dates for the ACLU survey were 2008-2012. Plaintiff immediately submitted a tort claim. (*Id.*)

Plaintiff, who is African American, alleges that he was a victim of selective policing during the April 28, 2009 incident and that he was targeted because of his race and not because he had committed a crime. Plaintiff alleges that Defendant Piper, one of the officers on the scene, saw Plaintiff sitting in his car and called 911 because Plaintiff was black. (*Id.* at 17.)

---

[2] It appears that the state court denied Plaintiff's petition for post-conviction relief on September 14, 2016. *See State v. Love*, No. A-0480-14T1, 2016 WL 4784058, at *3 (N.J. Super. Ct. App. Div. Sept. 14, 2016). From the available state court record, it appears that Plaintiff pleaded guilty to charges stemming from four separate indictments, including the indictment stemming from the April 28, 2009 incident. Plaintiff was indicted on September 11, 2009 and charged with one count of second degree distribution of cocaine within 500 feet of a public park, N.J.S.A. 2C:35-5a and N.J.S.A. 2C:35-7.1, third degree possession of cocaine, N.J.S.A. 2C:35-10a(1), third degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3), and one count of fourth degree tampering with evidence, N.J.S.A. 2C:28-6(1). On March 16, 2010, defendant negotiated a plea agreement with the State that resolved all of the charges reflected in all four indictments. *State v. Love*, 2016 WL 4784058, at *1.

Defendant further alleges that the dispatch operators, Defendants Santana and Tkacs, received the call from Defendant Piper and dispatched Defendant Officers Calogero, Pappas, and Daughton to racially profile Plaintiff despite the fact that Defendant Piper did not accuse Plaintiff of committing any crime. (*Id.* at 17-18.) Plaintiff alleges that these Defendants, together with Defendants Calogero and Pappas conspired to racially profile Plaintiff. (*See* Compl. at 17-20.)

Plaintiff further alleges that the ACLU study shows that the New Brunswick Police Department had a policy of targeting racial minorities while not enforcing the law against non-racial minorities, *i.e.*, whites. (*Id.* at 17.) Plaintiff alleges that Defendants Rowe, Dominquez, Miller, and Caputo were supervisors during the relevant period and were aware of the unlawful conduct of their subordinates through numerous complaints and the selective policing policy but failed to take corrective action. (*Id.* at 20.)

Plaintiff also alleges that Defendants Piper, Santana, Tkacs, Calogero, Daughton, Pappas, Rowe, Dominguez, Miller, and Caputo also violated Plaintiff's right to "access to the courts" by failing to inform the prosecutor of the selective policing evidence and their own misconduct, which would have allowed Plaintiff to mount a defense to the state's accusations. (*Id.* at 21.)

Plaintiff further alleges that Defendants D'Elia and Zanetakos, who are identified as assistant prosecutors in Middlesex County, also conspired with the other Defendants to selectively enforce the laws based on Plaintiff's race and were also aware of the selective policing policy in New Brunswick. (*Id.*) These Defendants prosecuted Plaintiff to cover up the misconduct of the other Defendants and likewise withheld exculpatory evidence of selective policing when the initiated Plaintiff's prosecution, denying him access to the courts. (*Id.*) Plaintiff further alleges that Defendants Carey and Kuberiet, as the supervisors of Defendants D'Elia and Zanetakos, failed to properly supervise their subordinates and created an environment

where prosecutors felt free to violate the rights of racial minorities. Defendants Lougy, Hoffman, Carey, Kuberiet, D'Elia and Zanetakos also allegedly violated Plaintiff's right to access to the courts by frustrating his efforts to get post-conviction relief by suppressing the racial profiling evidence. Plaintiff alleges that all the individual Defendants have violated his right to a civil remedy though § 1983 because he is unable to prove malicious prosecution without proving favorable termination, as the criminal proceeding resulted in his conviction and did not terminate in his favor. (*Id.* at 23-24.)

Plaintiff also alleges that entity Defendants City of New Brunswick, Middlesex County, Middlesex County Prosecutor's Office, New Jersey Attorney General's Office and individual Defendants Lougy, Hoffman, Kaplan, and Carey failed to supervise, train, and discipline the members of the New Brunswick police department and were aware of the policy of selective policing and encouraged it and/or acquiesced to it and were aware of the Officer Defendants' propensity to violate the constitutional rights of citizens of New Brunswick. (*Id.* at 24-27.)

Plaintiff alleges that the misconduct described above violated his constitutional rights under 42 U.S.C. §§ 1983 and 1985. (*Id.* at 44-47.) In addition to claims under 42 U.S.C. §§ 1983 and 1985, Plaintiff alleges that all Defendants were part of a RICO conspiracy to violate Plaintiff's rights, and the rights of other racial minorities, through their selective enforcement misconduct and by "fraudulently obtaining money from [racial minorities] and sending them to prison." (*Id.* at 36-44; 47-51.) With respect to his RICO allegations, Plaintiff alleges that the Defendant Calogero stole $423.00 dollars from him at the time of his arrest, and that he and other Defendants engaged in various acts of extortion, mail fraud, bank fraud, wire fraud, and obstruction of justice during 2009 in connection with Plaintiff's arrest and prosecution. He

further alleges that Plaintiff's prosecution resulted in the termination of Plaintiff's business/employment relationship.  (*Id.* at 47-51.)

## III.     STANDARD OF REVIEW

Under the PLRA, district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis*, *See* 28 U.S.C. § 1915(e)(2)(B).  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *Id.*  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

Here, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B).  When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the plaintiff's favor.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Complaint must also allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Courts are required to liberally construe pleadings drafted by *pro se* parties. *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, pro se litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). Furthermore, "[l]iberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.' *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## IV.    **ANALYSIS**

The Court construes Plaintiff to raise §1983 claims for false arrest/false imprisonment, excessive force, illegal search, selective enforcement, conspiracy, and denial of access to the courts, as well as a § 1985 conspiracy claim. The Court also construes Plaintiff to allege claims pursuant to federal RICO, as well as claims under state law. The Court addresses the federal claims first.

### a. Statute of Limitations

The statute of limitations is an affirmative defense that must generally be pleaded and proved by the defendants. *See Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir.1978) (statute of limitations on civil rights claim is an affirmative defense). While a plaintiff is not required to plead that the claim has been brought within the statute of limitations, *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir.2002), the Supreme Court observed in *Jones v. Bock*, 549 U.S. 199, 215 (2007), that if the allegations of a complaint, "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." The same principle applies to screening complaints under the PLRA. *See Whitenight v. Commonwealth of Pennsylvania State Police*, 674 F. App'x 142, 144 (3d Cir. 2017) ("When screening a complaint under § 1915, a district court may *sua sponte* dismiss the complaint as untimely under the statute of limitations where the defense is obvious from the complaint and no development of the factual record is required."); *Paluch v. Secretary Pennsylvania Dept. of Corrections*, 442 Fed. App'x 690, 694 n. 2 (3d Cir.2011) ("Although the statute of limitations applicable to § 1983 actions is an affirmative defense, which may be waived by the defendant, it is appropriate to dismiss sua sponte under § 1915(e)(2) a complaint whose untimeliness is apparent from the face of the record"); *McPherson v. United States*, 2010 WL 3446879 at *4 (3d Cir. Sept.2, 2010) ("[W]hen a statute-of-limitations defense is apparent from the face of the complaint, a court may *sua sponte* dismiss the complaint pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A"); *see also Archie v. City of Newark*, No. CIV. 12-3657 FSH, 2012 WL

2476229, at *3 (D.N.J. June 27, 2012) (dismissing complaint as time barred under *sua sponte* screening authority).

### 1. Civil Rights Claims

Under New Jersey law, there is a two-year statute of limitations period for personal-injury torts. N.J. Stat. Ann. § 2A:14-2. Because § 1983 claim is characterized as a personal-injury claim, such claims are governed by the applicable state's statute of limitations for personal-injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *see also Cito v. Bridgewater Township Police Dept.*, 892 F.2d 23, 25 (3d Cir. 1989). Thus, Plaintiff's § 1983 claims are governed by a two-year statute of limitations. *See Cito*, 892 F.2d at 25. The limitation period begins to run on the accrual date, which is governed by federal law. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Under federal law, a claim accrues when the facts which support the claim reasonably should have become known to the plaintiff. *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001)); *see also Large v. County of Montgomery*, 307 F. App'x. 606, 606 (3d Cir. 2009). "The determination of the time at which a claim accrues is an objective inquiry; [courts] ask not what the plaintiff actually knew but what a reasonable person should have known." *Kach*, 589 F.3d at 634. Importantly, accrual is not tied to whether the potential claimant knew or should have known that the injury constitutes a legal wrong. *Giles v. City of Philadelphia*, 542 F. App'x. 121, 123 (3d Cir. 2013) (citing *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982)). Rather, "a cause of action accrues when the <u>fact of injury</u> and its connection to the defendant would be recognized by a reasonable person." *Kriss v. Fayette Cty.*, 827 F. Supp. 2d 477, 484 (W.D. Pa. 2011) aff'd, 504 F. App'x. 182 (3d Cir. 2012) (emphasis added). Accordingly, "[a]s a general matter, a cause of

action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634. Furthermore, "the rule that a cause of action accrues upon discovery of the injury does not require that a plaintiff have identified every party who may be liable on its claim." *Graff v. Kohlman*, 28 F. App'x 151, 154 (3d Cir. 2002) (citing *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1125 (3d Cir.1997)).

New Jersey law governs when accrual of a § 1983 claim may be delayed pursuant to the discovery rule and when a limitation period may be equitably tolled. *See Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010); *Freeman v. State*, 347 N.J. Super. 11, 788 A.2d 867, 878 (App. Div. 2002).

The discovery rule postpones a claim from accruing if a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person. *See Caravaggio v. D'Agostini*, 166 N.J. 237, 765 A.2d 182, 187 (2001). Under New Jersey law, the discovery rule is used in special circumstances and where the interests of justice require in order "to postpone the accrual of a cause of action when a plaintiff does not and cannot know the facts that constitute an actionable claim." *Grunwald v. Bronkesh*, 131 N.J. 483, 492 (1993); *see also Jonas v. Gold*, 627 F. App'x 134, 139 (3d Cir. 2015) (explaining that New Jersey's "discovery rule postpones the accrual date of a cause of action 'until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.'" (quoting *Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563, 565 (1973)). Application of the rule starts the limitations period once a plaintiff is aware of "the facts underlying" the injury and fault, as opposed to "when a plaintiff learns the legal effect of those facts." *Id.* at 493.

"[E]quitable tolling may be applied where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass" or where a plaintiff "has in some extraordinary way been prevented from asserting his rights." *Freeman v. State*, 347 N.J. Super. at 31 (internal citations and quotations omitted). Equitable tolling may be appropriate where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. *Id.* "[A]bsent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Id.*

### A. False Arrest/Imprisonment, Excessive Force, and Illegal Search Claims

Here, Plaintiff alleges that his Fourth Amendment rights were violated on April 28, 2009, when members of the New Brunswick Police Department assaulted him, searched his person and his car, and arrested him without probable cause. Plaintiff's claims of excessive force, illegal search of his car, and unlawful arrest arise under the Fourth Amendment.[3]

A claim of false arrest, and the accompanying claim for false imprisonment, begins to accrue immediately upon the arrest at issue. *Wallace*, 549 U.S. at 389–90 & n.3; *Singleton v. DA Philadelphia*, 411 F. App'x 470, 472 (3d Cir. 2011) (ruling that accrual of a claim for false arrest occurred on the date that the plaintiff "was arrested and charges were filed against him");

---

[3] "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012). A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's "reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985); *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014). Warrantless searches are "per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions", *see Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)), which the Court need not recount here.

*Alexander v. Fletcher*, 367 F. App'x 289, 290–91 (3d Cir. 2010) (affirming the district court's conclusion that a § 1983 false arrest claim began to accrue on the date of arrest). Nevertheless, while the claim accrues upon arrest, the statute of limitations does not begin to run at the same time. Instead, the statute of limitations for a false arrest/imprisonment claim begins to run "when the individual is released, or becomes held pursuant to legal process," *i.e.*, is arraigned. *Alexander*, 367 F. App'x at 290 n. 2 (citing *Wallace*, 549 U.S. at 389-90); *see also Pittman v. Metuchen Police Dep't*, 441 F. App'x. 826, 828 (3d Cir. 2011).

Plaintiff's § 1983 claims premised on his false arrest and/or false imprisonment arising out of his 2009 arrest on drug charges are time barred because they accrued, at the latest, at the time he was arraigned on the charges, which was more than two years before he brought the instant Complaint in 2016. As such, these claims are dismissed without prejudice as untimely as to all Defendants.

The Court will also dismiss the Fourth Amendment claims for excessive force and unlawful search as barred by the two-year limitations period, as these claims accrued and the limitation period began to run at the time Plaintiff was injured on April 28, 2009. *Mujaddid v. Wehling*, 663 F. App'x 115, 119 (3d Cir. 2016) (explaining that excessive force and unlawful search claims accrue at the time of injury); *Rolax v. Whitman*, 53 F. App'x 635, 637 (3d Cir. 2002) (unlawful search claim accrues at time of search). As such, these claims are also dismissed without prejudice as untimely as to all Defendants.

### 1. Selective Enforcement and Related Conspiracy Claims

The Court also construes Plaintiff's Amended Complaint to raise a § 1983 claims for selective enforcement. To establish a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) "that this

selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right.'" *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993)). Because the incident giving rise to Plaintiff's selective enforcement claim occurred on April 28, 2009, this claim also appears to be untimely, unless the two-year limitations period is tolled by the discovery rule or is otherwise equitably tolled.

Typically, a "selective-enforcement claim will accrue at the time that the wrongful act resulting in damages occurs." *Dique*, 603 F.3d at 188. Under certain circumstances, however, a plaintiff may be reasonably unaware that he has been injured, and, in such circumstances, the selective enforcement claim does not accrue until the plaintiff becomes aware that he has been the victim of selective enforcement. *Id.* The plaintiff in *Dique*, for instance, was "reasonably unaware of his injury because [the arresting officer] purported to stop his car for a speeding violation." *Dique*, 603 F.3d at 188. Accordingly, the *Dique* plaintiff's selective-enforcement claim did not accrue, under the discovery rule, until "his attorney became aware of the extensive documents describing the State's pervasive selective-enforcement practices," including performing traffic stops on the basis of racial profiling. *Id.*

In order to delay accrual by operation of the discovery rule, however, a Plaintiff must plead facts showing that he was unaware of his injury or unaware that his injury was attributable to an identifiable person. In *Williams v. Trenton Police Dep't*, 591 F. App'x 56, 58 (3d Cir. 2015), the Third Circuit distinguished *Dique* as follows:

> In *Dique*, we held that the plaintiff's selective enforcement claim did not accrue until 11 years after his arrest because he was initially stopped for speeding, and it was not until his attorney discovered documents outlining the selective enforcement practices that he could have known his stop was part of such a scheme. Williams, on the other hand, knew of the potential for

> illegality of the arrest the same night. Williams stated that very
> night that he knew the identity of the CI, taunting the police
> officers that they would never get a conviction. The discovery rule
> therefore does not apply to these facts, as there was nothing new to
> discover.

*Id.*[4]  Likewise, in this case, the Plaintiff knew at the time of the incident that the use of excessive

force, his arrest, and the search of his person and vehicle were illegal.  In a prior decision in a

selective enforcement case brought by Mr. Love, this Court also distinguished *Dique* and found

that plaintiffs who alleged that they were arrested <u>without probable cause</u>, i.e., for no reason,

should reasonably have discovered their selective enforcement injuries at the time of their arrest.

*See Love v. N.J. State Police*, Civ. No. 14-1313 (FLW), 2016 U.S. Dist. LEXIS 69562, at *37,

2016 WL 3046257 (D.N.J. May 26, 2016) (finding plaintiffs should reasonably have discovered

their selective enforcement injuries at the time of arrest and search, because plaintiffs were

allegedly arrested for "no apparent reason" and defendants purportedly falsely claimed to have

discovered controlled substances in their search of plaintiffs' persons and car); *see also Freeman*,

347 N.J. Super. at 22 (holding that plaintiffs alleging racial profiling were not entitled to

discovery rule because they were aware of the harm done to them the moment the vehicle they

occupied was searched without probable cause).

The current action is also distinguishable from *Dique*.  In *Dique*, the plaintiff was told he

was detained due to a traffic violation and had absolutely no reason to know that he was even

---

[4] Williams filed suit under 42 U.S.C. § 1983, seeking damages for alleged violations of the
Fourth Amendment by Trenton police detectives, who arrested and detained Williams on the
anonymous tip of a Confidential Informant (CI). In his deposition for the case, Williams stated
that on the night of the arrest, he immediately knew the identity of the CI and told the police that
same night that they would never secure a conviction because the CI was not reliable enough to
establish probable cause. At the time of his criminal trial, Williams filed a motion to suppress on
this basis. The trial judge held a suppression hearing on April 11, 2011, granting Williams's
motion.  Lacking other evidence, the prosecutors dropped the charges shortly thereafter.
Because Williams knew he had been injured on the night of his arrest, the discovery rule was
inapplicable.  *Williams*, 591 F. App'x at 57.

injured until he later found out about the state's racial profiling policies, in this case, on the very date of Plaintiff's arrest, he knew that he was injured and that identifiable persons caused those injuries. *See e.g., Vessels v. City of Philadelphia*, No. CIV.A. 09-5586, 2011 WL 4018137, at *7 (E.D. Pa. Sept. 8, 2011) (distinguishing *Dique* on same basis). Here, facts alleged in the Complaint plainly indicate that Plaintiff knew at the time of his arrest in 2009 that he had been injured by the Defendant Officers who assaulted him, searched his person and car, and falsely arrested him on drug charges. Although he did not know the present theory of his case, *i.e.*, selective enforcement based on racial profiling or the possibility of additional defendants, he was certainly aware that he had been injured and had a complete cause of action in 2009. As such, the discovery rule does not apply to Plaintiff's selective enforcement claims.

For the same reason, Plaintiff has not made out a case for equitable tolling. Here, Plaintiff knew or should have known that he had a cause of action under 42 U.S.C. §1983 when he was injured by the Officer Defendants on April 28, 2009, and the fact that he did not know that the misconduct of the Officer Defendants and other Defendants would also support a cause of action for selective enforcement does not relieve him from the obligation of filing his § 1983 claims within the two-year period.

Plaintiff also alleges that Defendants conspired to selectively enforce the laws. "[C]ivil conspiracy is [merely] a vehicle by which § 1983 liability may be imputed to those who have not actually performed the act denying constitutional rights." *McGovern v. City of Jersey City*, 98-CV-5186 (JLL), 2006 WL 42236, at *9 (D.N.J. Jan. 6, 2006) (citing *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 832 n. 23 (D.N.J. 1993)). The elements of a § 1985(3) claim are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and

immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotations and citations omitted). To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir.2003). Plaintiff's allegations of conspiracy, however, do not preserve claims that are otherwise time barred, because a civil conspiracy cause of action accrues at the time of each overt act challenged. *See Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir. 1984); *Cf. Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982) (per curiam) (with regard to a claim alleging a conspiracy to secure false testimony, contemporaneous knowledge of false testimony led to accrual of cause of action, even if the plaintiff "may not have known all the facts necessary" to establish a conspiracy). Thus, to the extent that the Plaintiff wishes to "revive time-barred injuries" through allegations of conspiracy, he may not do so. *Wells*, 728 F.2d at 217; *see also Graff v. Kohlman*, 28 F. App'x 151, 154 (3d Cir. 2002) (rejecting the contention that later conduct "establishe[d] a 'continuing conspiracy' against [the plaintiff] that makes his April 4, 1999 filing timely" for harms dating from 1992 and 1993).

For these reasons, the Court will dismiss the selective enforcement claims and the related conspiracy claims without prejudice as to all Defendants.

### 2. Access to the Courts Claim and Conspiracy to Deny Access to the Courts

Plaintiff also alleges that Defendants have violated 42 U.S.C. § 1983 and denied him his constitutional right of access to the courts by concealing their use of racial profiling and selective

enforcement, which has prevented Plaintiff from mounting a defense to the drug charges and has prevented him from setting aside his state court conviction.[5] Plaintiff's ability to set aside his state court conviction has, in turn, prevented him from bringing a § 1983 claim for malicious prosecution against Defendants because this type of claim requires him to show that his criminal proceeding terminated in his favor.[6]

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. *See Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. *See Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). *See also Peterkin v. Jeffes*, 855 F.2d 1021, 1036 n. 18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

---

[5] It is not clear from the face of the Complaint that Plaintiff's access to the courts claims are untimely. Courts to have considered the issue have found that an access to the courts claim accrues when the Plaintiff was actually injured and have defined that injury in terms of when Plaintiff lost his or her underlying claim. *See Kwanzaa v. Brown*, No. CIV.A. 05-5976 (RMB), 2006 WL 2403978, at *10 (D.N.J. Aug. 17, 2006) (finding that Plaintiff's access to courts claim asserted accrued when the alleged actual injury occurred, i.e., dismissal of plaintiff's appeal"); *Shabazz v. Johnson*, 64 F. App'x 417, 417 (5th Cir. 2003) (per curiam) (section 1983 complaint seeking redress for denial of access to the courts for a habeas petition was timely when filed within two years of the Supreme Court's denial of certiorari on the habeas petition, concluding that the relevant injury did not occur until denial of certiorari). The Complaint does not provide the date of Plaintiff's conviction on drug charges and indicates that his appeal was still pending at the time he filed the instant Complaint. Furthermore, as explained in the Opinion, it is not clear that Plaintiff has lost the opportunity to set aside his conviction based on the newly discovered evidence of racial profiling.

[6] The Court does not construe Plaintiff to raise a malicious prosecution claim; rather, the Court construes Plaintiff to raise a denial of access to the courts claim premised on the "loss" of his malicious prosecution claim. Indeed, were Plaintiff to allege a malicious prosecution claim, it would be subject to dismissal for failure to allege favorable termination of his criminal proceeding.

Access to the courts claims fall into two general categories. "In the first are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time."[7] *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). In the first category of cases, "the opportunity has not been lost for all time" and "the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* The second category, often referred to as "backward looking", covers claims dealing with "specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future. *Id.* at 536 U.S. at 413–14. The backward-looking First Amendment denial-of-access-to-court claims identified by the Supreme Court involved situations in which "official acts" caused the denial of access to the courts. *Beckerman v. Weber*, 317 F. App'x 125, 127 (3d Cir. 2008) (citing *Christopher*, 536 U.S. at 413–14). As explained by the Supreme Court:

> The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case, e.g., *Foster v. Lake Jackson*, 28 F.3d 425, 429 (C.A.5 1994); *Bell v. Milwaukee*, 746 F.2d 1205, 1261 (C.A.7 1984) ("[T]he cover-up and resistance of the investigating police officers rendered hollow [the plaintiff's] right to seek redress"), the loss of an opportunity to sue, e.g., *Swekel v. River Rouge*, 119 F.3d 1259, 1261 (C.A.6 1997) (police coverup extended throughout "time to file suit ... under ... statute of limitations"), or the loss of an opportunity to seek some particular order of relief, as [the Plaintiff] alleges here. These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but

---

[7] Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). Thus, in prison-litigation cases, "the relief sought may be a law library for a prisoner's use in preparing a case, 430 U.S. at 828; *Lewis v. Casey*, 518 U.S. 343, 346–348 (1996), or a reader for an illiterate prisoner, *id.*, at 347–348, or simply a lawyer." *Id.*

> simply the judgment in the access claim itself, in providing relief
> obtainable in no other suit in the future.

*Christopher*, 536 U.S. at 414. Whether an access claim turns on a litigating opportunity yet to be

gained or an opportunity already lost, the very point of recognizing any access claim is to

provide some effective vindication for a separate and distinct right to seek judicial relief for

some wrong. *Id.* at 414-15.

"[A] prisoner alleging a violation of his right of access must show that prison officials

caused him past or imminent 'actual injury' by hindering his efforts to pursue such a claim."

*Banks v. Fraiser*, No. CIV A 06-4152 FLW, 2007 WL 38909, at *4 (D.N.J. Jan. 4, 2007) (citing

*Lewis v. Casey*, 518 U.S. 343 (1996)). Crucially, "[w]here prisoners assert that defendants'

actions have inhibited their opportunity to present a past legal claim, they must show (1) that

they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable'

underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense'

for the lost claim other than in the present denial of access suit." *Monroe*, 536 F.3d at 205-06

(citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Thus, as explained by the Third

Circuit, prisoners bringing access to the court claims "must satisfy certain pleading requirements:

The complaint must describe the underlying arguable claim well enough to show that it is "more

than mere hope," and it must describe the "lost remedy." *Id.* (citing *Christopher* 536 U.S. at 416–

17); *see also Schreane v. Holt*, 482 F. App'x 674, 676 (3d Cir. 2012) (A plaintiff does not

establish a constitutional violation when he establishes only that he had a "mere hope" that he

would prevail on the underlying claim.). Furthermore, conclusory allegations that an inmate

suffered prejudice will not support an access-to-courts claim. *Duran v. Merline*, 923 F. Supp. 2d

702, 722-23 (D.N.J. 2013) (citing *Arce v. Walker*, 58 F.Supp.2d 39, 44 (W.D.N.Y.1999) (internal

citations omitted)).

Here, Plaintiff complains of lost claims. He contends that the Defendants' concealment of their racial profiling and selective enforcement prevented him from (1) defending against the drug charges, (2) setting aside his conviction, and (3) bringing a claim for malicious prosecution. If he were to prevail on the first and second arguments, it would necessarily imply the invalidity of his conviction on the drug charges, and is thus barred at this time by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a claim is not cognizable under section 1983 where recovery on that claim would "necessarily imply the invalidity" of the plaintiff's outstanding conviction. *Id.* at 486–87. In *Heck*, the Supreme Court commented that "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to section 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486. In *Wilkinson v. Dotson*, the Supreme Court further clarified the holding in *Heck*, finding that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." 544 U.S. 74, 81–82 (2005).

Furthermore, with respect to his second contention, Plaintiff has not pleaded facts showing that he has even attempted to set aside his conviction in state court based on his newly discovered evidence of alleged racial profiling and selective enforcement, and that the state court has rejected these arguments. As such, he has not shown that he has lost that remedy. His allegations of prejudice are wholly conclusory, especially because New Jersey courts permit challenges to criminal convictions based on newly discovered evidence, and Plaintiff alleges that

his appeal of the relevant conviction was still pending before the state courts at the time he filed this action.

Finally, Plaintiff contends that he is unable to bring a claim for malicious prosecution because he is unable to meet the favorable termination requirement for such a claim. A claim for malicious prosecution accrues only when "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 486–87, (footnote omitted). Although the Court agrees that Plaintiff is currently unable to meet the favorable termination requirement, any claim for malicious prosecution would be dismissed <u>without prejudice</u> until such time that Plaintiff sets aside his conviction. Unlike his other Fourth Amendment claims, Plaintiff's claims for malicious prosecution are not time barred, and are not "lost", as Plaintiff has not pleaded facts showing that he has even attempted to set aside his conviction based on the newly discovered evidence of alleged racial profiling or that the New Jersey courts have rejected his arguments.[8]

Plaintiff also fails to state conspiracy claims under §§ 1983 and 1985 premised on the denial of access to the courts because he has not sufficiently alleged an access to the courts claim. *See Stallings v. Cruz*, No. 15–7488, 2016 WL 3067438, at *3 n.2 (D.N.J. May 31, 2016) ("Civil conspiracy is [merely] a vehicle by which § 1983 liability may be imputed to those who have not actually performed the act denying constitutional rights .... As a result, a § 1983 conspiracy claim is not actionable without an actual violation of § 1983.") (internal quotation

---

[8] "[A] § 1983 claim for false arrest accrues on the date of the plaintiff's arrest, while a malicious prosecution claim does not accrue until a favorable termination is obtained." *Torres v. McLaughlin*, 163 F.3d 169, 176 (3d Cir. 1998) (citing *Rose v. Bartle*, 871 F.2d 331, 348–351 (3d Cir.1989)).

marks and citations omitted); *Washington v. Essex Cty. Sheriff's Dep't*, No. CV147453KMJBC, 2017 WL 4858120, at *3 (D.N.J. Oct. 25, 2017)(conspiracy to maliciously prosecute Plaintiff not cognizable where Plaintiff failed to plead elements of malicious prosecution); *Issa v. Delaware State Univ.*, No. 14-168, 2017 WL 3328542, at *7 (D. Del. Aug. 4, 2017) (citing *Black v. Montgomery Cty.*, 835 F.3d 358, 372 n.14 (3d Cir. 2016, as amended Sept. 16, 2016) ("Because the District Court reasoned that Black could not succeed on her underlying Fourth Amendment malicious prosecution or Fourteenth Amendment due process claims, it correctly determined that she could not succeed on her conspiracy claims").

For all these reasons, the Court will dismiss Plaintiff's access to the courts claims and his conspiracy to deny him access to the courts claims without prejudice as to all Defendants.

### 3. RICO Claims

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Any person injured in his business or property by reason of a violation of section 1962 ... may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." *Id.* § 1964(c). The Supreme Court has held that a four-year statute of limitations applies to civil RICO claims. *Forbes v. Eagleson*, 228 F.3d 471, 483 (3d Cir. 2000) (citing *Agency Holding Corp. v. Malley-Duff & Assoc.*, 483 U.S. 143, 156 (1987)), which is not triggered until the plaintiff knew or should have known of his injury as well as the source of the injury, *Prudential Ins. Co. of America v. U.S. Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004) (citing *Forbes v. Eagleson*, 228 F.3d 471, 484–85 (3d Cir.2000)).

Unlike 42 U.S.C. § 1983, which redresses violations of civil rights, "[t]he RICO statute provides for civil damages for any person injured in his business or property by reason of a violation of [§ 1962]." *Amos v. Franklin Fin. Servs. Carp.*, 509 F. App'x 165, 167 (2013) (quoting *Tabas v. Tabas*, 47 F.3d 1280, 1289 (3d Cir.1995)). A violation of the statute

> requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim. Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is the mere commission of the predicate offenses. In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.

*Id.* The injury to business or property element requires "proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir.1994)). A complaint therefore must contain allegations "of actual monetary loss, *i.e.*, an out-of-pocket loss" to adequately plead the injury element. *Id.* Physical or emotional harm to a person is insufficient to show that a person was injured in his business or property under the act. *Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 227 (3d Cir. 2007). "Similarly, losses which flow from personal injuries are not [damage to] property under RICO." *Id.* (internal quotations omitted). Losses derived from a Plaintiff's false imprisonment are derivative of a personal injury, and therefore cannot constitute a RICO injury. *See Magnum v. Archdiocese of Philadelphia*, No. 06–2589, 2006 WL 3359642, at *4 (E.D. Pa. Nov. 17, 2006), *aff'd*, 236 F. App'x 224 (2007); *see also Evans v. City of Chicago*, 434 F.3d 916, 926–27 (7th Cir. 2006), *overruled in part on other grounds*, *Hill v. Tangherlini*, 724 F.3d 965, 967 n. 1 (7th Cir.2013); *see also Parness v. Christie*, No. CIV.A. 15-3505 JLL, 2015 WL 4997430, at *6–7 (D.N.J. Aug. 19, 2015) (collecting cases).

After *Rotella v. Wood*, 528 U.S. 549 (2000), the Third Circuit adopted the injury discovery rule in *Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000), holding that in determining statute of limitations issues in civil RICO claims "[courts] must determine when the plaintiffs knew or should have known of their injury." *Id.* at 484. In addition to the injury, the plaintiffs must also have known or should have known of the source of their injury. *Id.* at 485. As the Third Circuit explained in *Forbes*, "nothing more" than these two requirements "was required to trigger the running of the four-year limitations period [of a civil RICO claim]." *Id.* (citations omitted); *see also Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004).

The statute of limitations period in a RICO case can also be tolled where the plaintiff demonstrates fraudulent concealment. *Forbes*, 228 F.3d at 486–87. Fraudulent concealment "'is an equitable doctrine that is read into every federal statute of limitations,'" *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 508 (3d Cir.2006) (quoting *Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 256 (3d Cir.2001)), and "it will toll the RICO limitation period 'where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it.'" *Id.* at 509 (quoting Mathews, 260 F.3d at 256). "[A] plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'" *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194 (1997). In order to benefit from this equitable doctrine, the plaintiff must ultimately prove: "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." *Cetel*, 460 F.3d at 508 (citing *Mathews*, 260 F.3d at 256); *see also In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 400–01 (3d Cir. 2015). "To demonstrate reasonable

diligence, a plaintiff must establish that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir. 2006) (brackets and internal quotation marks omitted).

Here, Plaintiff's appears to allege that his RICO injuries, *i.e.*, injury to business or property, are (1) Defendant Calogero's theft of $423.00 from him at the time of his arrest, which appears to have been subject to civil forfeiture, and (2) Plaintiff's loss of business opportunities due to his incarceration, both of which occurred in 2009. There is nothing in the Complaint to suggest that Plaintiff did not know of these injuries or the source of these injuries in 2009. *See, e.g., Kadonsky v. New Jersey*, 188 F. App'x 81, 85–86 (3d Cir. 2006) (finding RICO claims against county and county prosecutors' based on civil forfeiture to be time barred because Plaintiff knew of his injury at the time his money was seized and rejecting Plaintiff's arguments regarding delayed accrual). Furthermore, Plaintiff has not pleaded <u>any facts</u> showing that he exercised reasonable due diligence in attempting to uncover the relevant facts in connection with his RICO claim. Plaintiff simply alleges in a conclusory manner that the Defendants concealed their racial profiling and selective enforcement activities from him and that he learned of the pattern of racial profiling in 2016 by happenstance when he was watching television in his prison cell.

For these reasons, the Court will dismiss the RICO claims without prejudice as to all Defendants as barred by the four-year statute of limitations.[9]

---

[9] Because the Court has dismissed Plaintiff's RICO claims as untimely, it does not otherwise address the merits of his RICO claims.

## B. State Law Claims

Although the Complaint fails to state a federal claim, Plaintiff also raises state law claims for relief. Because the Court has dismissed the federal claims, the remaining potential basis for this Court's jurisdiction over Plaintiff's state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284–1285 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons*, Inc., 983 F.2d at 1284–1285. Here, the Court has dismissed the federal claims at the earliest possible

stage of the proceedings and exercises its discretion to decline supplemental jurisdiction at this time.[10]

## V. <u>CONCLUSION</u>

For the reasons stated in this Opinion, the federal claims are dismissed without prejudice as to all Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B).  Having dismissed the federal claims at screening, the Court declines supplemental jurisdiction over any remaining state law claims. Plaintiff may submit an Amended Complaint within 30 days to the extent he is able to cure the deficiencies in his federal claims.[11]  An appropriate Order follows.

<u>/s/ Freda L. Wolfson</u>
Freda L. Wolfson, U.S.D.J.

Dated: January 16, 2018

---

[10] If Plaintiff submits an Amended Complaint that states a federal claim for relief and reasserts his state law claim, the Court will exercise supplemental jurisdiction at that time.

[11] Plaintiff may only submit an Amended Complaint if he can plead facts showing he is entitled to the discovery rule and/or equitable tolling on his time barred claims and/or that he is able to cure the deficiencies in his access to the courts claims.